IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

| | | |
|---|---|---|
| SHARON L. STEWART | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| V. | * | NO: 3:10CV00103 SWW |
| | * | |
| UNITED STATES POSTAL SERVICE | * | |
| | * | |
| | * | |

## ORDER

Plaintiff Sharon Stewart ("Stewart") brings this employment discrimination action against the United States Postal Service ("USPS"), pursuant to Title VII of the 1964 Civil Rights Act. Before the Court is the USPS's motion for summary judgment (docket entries #14, #15, #16), Stewart's response in opposition (docket entries #21, #22, #23, #24), and the USPS's reply (docket entry #25). After careful consideration, and for reasons that follow, summary judgment will be entered in the USPS's favor, and this action will be dismissed with prejudice.

**I.**

Stewart, who is black, is employed as a letter carrier at the West Memphis Post Office. She alleges that the USPS subjected her to a racially hostile work environment and discriminated against her based on her race. The USPS moves for summary judgment, asserting that Stewart lacks evidence to support her claims.

**II.**

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). As a

prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

The non-moving party may not rest on mere allegations or denials of his pleading but must "come forward with 'specific facts showing a genuine issue for trial.'" *Id*. at 587 (quoting Fed. R. Civ. P. 56(e)).  "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995).

**III.**

Hostile Environment.  Stewart claims that she endured a racially hostile work environment created by the conduct and actions of Mark Merritt, who served as the Postmaster of the West Memphis Post Office from July 1999 through July 2008.

An employer creates an actionable hostile work environment if "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe and pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Systems, Inc*., 510 U.S. 17, 21 (1993).  To hold an employer liable for a racially hostile work environment caused by the actions of a supervisor, the aggrieved employee must show: (1) she is a member of a protected group; (2) unwelcome harassment occurred; (3) a causal nexus existed between the harassment and her protected-group status; and (4) the harassment affected a term, condition, or privilege of employment. *See Carter*

*v. Chrysler Corp.*, 173 F.3d 693, 700 (8th Cir.1999).

To be actionable, an allegedly hostile work environment must be both objectively and subjectively offensive--one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so. *See Faragher v. City of Boca Raton*, 524 U.S. 775, 787, 118 S.Ct. 2275, 2283 (1998)(setting forth standards to evaluate claims of hostile work environment based upon sexual harassment); *see also Gipson v. KAS Snacktime Co.*, 171 F.3d 574, 578 (8th Cir. 1999) ("The same standards are generally used to evaluate claims of hostile work environment based upon sexual harassment and racial harassment."). In determining whether sufficient evidence of a hostile work environment has been presented, the totality of the circumstances must be considered, including the frequency and severity of the discriminatory conduct, whether such conduct was physically threatening or humiliating, as opposed to a mere offensive utterance, and whether the conduct unreasonably interfered with the employee's work performance. *See  Vajdl v. Mesabi Academy of KidsPeace, Inc.*, 2007 WL 1201867, *3 (8th Cir. April 25, 2007)(citing *Duncan v. General Motors Corp.*, 300 F.3d 928, 884 (8th Cir. 2002)).

The USPS asserts that Stewart's hostile environment claim is subject to summary judgment because she cannot show that she endured harassment so severe or pervasive as to affect a term, condition, or privilege of her employment.   For reasons that follow, the Court agrees.

In support of her hostile environment claim, Stewart cites four instances of alleged harassment.  First, she alleges that in September 2005, Merritt instructed a white employee not to let "those niggers" come into the postoffice without identification badges.   Stewart does not claim that she was present when Merritt uttered the directive, but she presents the affidavit of a truck driver, who testifies that he overheard Merritt's offensive language.  *See* Docket entry #21,

Ex. 2.

Second, Stewart claims that in September 2005, Merritt stated during a post office meeting that black people lie and steal. Stewart does not claim that she heard Merritt's statement, but she presents the affidavit of Mable Anthony, who worked as the manager of the West Memphis Post Office and attended the meeting in question. Anthony testifies that Merritt stated that he hated "his clerks" and that all of them "lie and steal." Docket entry #21, Ex. #6 (Anthony Aff.). Anthony does not corroborate Stewart's claim that Merritt specifically stated that all black people lie and steal, but she states her belief that Merritt was silently referring to black postal clerks. *Id*.

Third, Stewart claims that Merritt failed to inform black employees about hidden cameras placed in the post office. Apparently, Stewart surmises that Merritt suspected that a black employee was committing theft. The USPS presents undisputed evidence that in June 2005, after money was taken from a coffee fund in the post office breakroom, agents from the Office of Inspector General ("OIG") reset surveillance cameras to observe activity in the breakroom. Stewart presents the affidavit Edna Stokes, a mail processor, who testifies that in addition to the camera in the breakroom, cameras were positioned to record the activities of window clerks.[1] Docket entry #21, Ex. #8 (Stokes Aff.) at 3. Stokes testifies: "They did not tell black employees until it was over." *Id*.

Stewart offers no evidence that Merritt told anyone other than the post office custodian that hidden cameras had been activated. However, a white female named Stacey Young, who worked as a post office supervisor at the time in question, testifies that OIG agents told post

---

[1] The Court notes that Miles works as a letter carrier, not a window clerk.

4

office supervisors about the cameras. *See* docket entry #16, Ex. #12 (Young Aff.).

Fourth, Stewart reports that Merritt ridiculed a black postal worker about his hair. Stewart does not claim that she observed Merritt ridiculing the worker, but she presents the affidavit of a coworker named Edna Stokes who states that she "heard Merritt refer to custodian Fred Wilson's dreadlocks and shitlocks." Docket entry #21, Ex. #8.

Stewart does not claim that she was aware of Merritt's use of the word nigger, statements he made during the aforementioned September 2005 meeting, or his alleged "shitlocks" comment. Nor does she claim that in June 2005, she was aware that black employees were not informed that hidden cameras in the post office had been activated. "A Title VII plaintiff 'may only rely on evidence relating to harassment of which she was aware during the time that she was allegedly subject to a hostile work environment.'" *Cottrill v. MFA, Inc*. 443 F.3d 629, 636 -637 (8th Cir. 2006)(quoting *Hirase-Doi v. U.S. West Communications, Inc*., 61 F.3d 777, 782 (10th Cir. 1995)). Without evidence that Stewart was aware of events that allegedly contributed to a hostile work environment, she is unable to show that she subjectively perceived that her environment was hostile. Furthermore, even assuming that Stewart was aware that Merritt uttered the word "nigger" on one occasion, stated that he hated his clerks because they lie and steal, called a black employee's dreadlocks "shitlocks," and failed to tell black employees about hidden cameras, these incidents simply to not support a finding that she endured severe, pervasive work conditions that a reasonable person would find hostile or abusive. *See, e.g., Bainbridge v. Loffredo Gardens, Inc*., 378 F.3d 756, 759 (8th Cir.2004) (finding racial remarks, made directly to plaintiff, once a month for two years by owner and operators, insufficient to render the workplace objectively hostile).

Disparate Treatment.  To establish discrimination based on disparate treatment, Stewart shoulders the burden to show, with circumstantial or direct evidence, that the complained-of conduct was motivated by race discrimination.  Because Stewart presents no evidence that directly points to the presence of a discriminatory motive, the Court will analyze her disparate treatment claims under the three-part framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1972).

Under the *McDonnell Douglas* framework, Stewart must establish a *prima facie* case of discrimination by showing that (1) she is a member of a protected class; (2) she met the legitimate expectations of her employer; (3) she suffered adverse employment action; and (4) similarly situated employees that were not members of her protected class were treated differently.  See *Philip v. Ford Motor Co.*, 413 F.3d 766, 768 (8th Cir. 2005).  Under the fourth element, Stewart "bears the burden to proffer 'specific, tangible evidence' that employees who were 'similarly situated in all respects' to [her] received different treatment from [the USPS]." *Id.* (quoting *Rose-Maston v. NME Hosp., Inc.,* 133 F.3d 1104, 1109 n. 4 (8th Cir.1998) (first internal quote); *Gilmore v. AT&T,* 319 F.3d 1042, 1046 (8th Cir. 2003) (second internal quote)).

In support of her disparate treatment claim, Stewart alleges that Merritt allowed white employees to report to work early, but he did not allow black employees to do the same.  Stewart presents the portion of a written statement by postal worker Kenneth Thomas, which reads as follows:

> In late October and early November . . . 2005, Mark Merritt authorized Stacy Blagg (Young) to have ceratin employees report to work at 6:30 a.m. or 7:00 a.m. because of the supposedly heavy curtailed mail volume on their routes. . . . All of these employees authorized to report to work early were white employees and not all of them had heavy curtailed mail volume.  Sharon Stewart questioned Mark Merritt about this on the morning of November 4, 2005 in the breakroom. . . . Sharon

> [Stewart] told Mark [Merritt] that all of the routes that he authorized to report to work early didn't have heavy curtailed mail. Mark told Sharon that it only seemed that way to her[,] and Sharon told Mark that was the way things really are. Mark Merritt told Sharon that if she really felt that way, "You know what to do–filed you an EEO.

Docket entry #21, Exs. #5, #9.

The USPS asserts that Stewart has failed to allege or present any evidence that the white employees who she claims received favorable treatment were similarly situated to her in all relevant respects. The Court agrees. Stewart presents no evidence that her workload was similar to the unidentified white employees who she claims were permitted to report early based on heavy mail volume. Furthermore, Stewart presents no evidence showing that she suffered adverse employment action as a result of not being permitted to report to work early. *See Sallis v. University of Minn.*, 408 F.3d 470, 476 (8th Cir. 2005)(noting that an adverse employment action is a tangible change in working conditions that produces a material employment disadvantage–such as termination, reduction in pay or benefits, and changes in employment that significantly affect an employee's future career prospects). In sum, the Court finds that Stewart has failed to establish a *prima facie* case of disparate treatment.

**IV.**

Finding no genuine issues for trial in this case, the Court finds that Defendant's motion for summary judgment (docket entry #14) should be and it is hereby GRANTED. Pursuant to the judgment entered together with this order, this action is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED THIS 26TH DAY OF JANUARY, 2011.

/s/Susan Webber Wright

UNITED STATES DISTRICT JUDGE